IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY WOODING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) Civil Action No. 05-1681 | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Chief District Judge.

OPINION and ORDER OF COURT

SYNOPSIS

A veteran who underwent surgery at a VA medical center asserts that a physician both misrepresented his experience and committed medical malpractice. The Government seeks the entry of summary judgment in its favor on both claims. Summary judgment is granted on the medical malpractice claim but denied on the misrepresentation claim.

OPINION

Plaintiff Henry Wooding ("Wooding") is a veteran of the Armed Forces of the United States of America. As a veteran, he received health care and treatment throughout the years via the Department of Veterans Affairs ("DVA"). In particular, on or about June 13, 2001, Wooding underwent an operation at the DVA Medical

1

Center in Pittsburgh, Pennsylvania.[1]  Peter Dirksmeier, M.D., operated on Wooding. During the operation, Wooding's dura was punctured and cerebrospinal fluid leaked causing, what Wooding describes as, permanent injuries.

As a consequence of these injuries, Wooding and his wife, Plaintiff Phoebe Wooding, commenced this action against Defendant the United States of America ("the Government").  The Complaint sets forth two remaining claims, one entitled "informed consent" (which I will refer to as "misrepresentation")[2] and one related to medical malpractice.

The Government has filed two Motions for Partial Summary Judgment (Docket Nos. 11 and 29) seeking the entry of summary judgment on both counts.  For the reasons set forth below, the Motion for Partial Summary Judgment on Count I is DENIED and the Motion for Partial Summary Judgment on Count II is GRANTED.

## Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is

---

[1] The operation was an "anterior C6 cervical corpectomy and instrumented fusion with iliac crest bone graft."

[2] The informed consent claim did originally include allegations that Dirksmeier failed to obtain Wooding's informed consent because he had not fully explained the risks associated with the surgery.  The Government initially moved for partially summary judgment on the informed consent claim based upon Wooding's concession that he was fully informed of the risks of the surgery. See Docket No. 10.  Wooding made clear in his Brief in Opposition, however, that he was no longer pursuing this claim.  Instead, in Count I, Wooding was seeking relief based upon the misrepresentation of Dirksmeier's experience.  The Government has filed a Reply Brief addressing the merits of this claim.

entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

Analysis

*I. Count I - Misrepresentation*[3]

Wooding contends that Dirksmeier exaggerated and misrepresented his experience, leading him to believe that he was an expert in the field of treating and operating on cervical spine conditions. It appears undisputed that, at the time of Wooding's surgery, Dirksmeier had completed his Orthopaedic Surgery Residency at the University of Pittsburgh Medical Center and was in the last month of completing his Orthopaedic Surgery Fellowship at the University of Pittsburgh Medical Center. It also appears to be undisputed that, when Wooding and his wife asked Dirksmeier about his experience prior to the surgery, Dirksmeier did not: reveal that he had not yet completed his Fellowship; reveal that he was not yet board certified; or reveal that he was not permitted to conduct surgery without supervision by another surgeon. Wooding contends that, had such information been disclosed to him, he would not have consented to Dirksmeier's performing the operation.

The Government contends that this claim is not viable for a number of reasons. Those arguments which characterize the claim as one of "informed consent," and seek the entry of summary judgment on that basis, are unconvincing. While I agree that Wooding did label his claim as one for "informed consent," it is

---

[3] Again, although Wooding labeled this claim in the Complaint as one for "informed consent," I will refer to it as one for "misrepresentation." As set forth below, the allegations describing the cause of action are fairly interpreted as giving rise to a claim for misrepresentation.

4

clear that, upon closer inspection, the remaining portion of that claim[4] is actually one for misrepresentation. Consequently, I decline to address the arguments which focus upon the lack of viability of an informed consent claim.[5] Instead, I will address the Government's argument regarding the viability of a misrepresentation claim.

In short, the Government argues that Wooding's misrepresentation claim is time barred because it was not raised in Wooding's original administrative claim. I agree that Wooding had two years to raise and exhaust his misrepresentation claim. See 28 U.S.C. § 2401(b). Wooding first mentions the facts supporting his misrepresentation claim, and his intention to pursue relief for the same, in a letter dated March 11, 2005. See Docket No. 26-3. This is well after the two year statute of limitations would otherwise have expired.

Yet, as Wooding argues, 28 C.F.R. § 14.2(c) provides that:

> [a] claim presented in compliance with paragraph (a) of this section may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a).

28 C.F.R. 14.2. I find that Wooding did "amend" his original administrative tort claim

---

[4] As set forth elsewhere in this Opinion, Wooding has conceded that his informed consent claim based upon Dirksmeier's alleged failure to fully inform him of the risks of the surgery is not viable.

[5] As such, I decline to consider the Government's argument that under Duttry v. Patterson, 565 Pa. 130, 771 A.2d 1255, 1259 (2001), "evidence of a physician's personal characteristics and experience is irrelevant to an informed consent claim"; the contention that the informed consent claim is untimely; and the argument that Pennsylvania's Informed Consent Statute, 40 P.S. Section 1303.504(d)(2) is not applicable. With respect to the last argument, Wooding appears to base his *misrepresentation* claim, not on the Informed Consent statute, but, in part, upon the passage in Duttry recognizing the possibility of a misrepresentation claim as well as Section 557A of the Restatement (Second) of Torts.

by virtue of his May 11, 2005 letter to VA counsel. That he might have called it an "informed consent" claim is not dispositive. The letter stated that:

> Because he considered the surgery to have potentially serious harmful consequences, he and his wife inquired of Dr. Peter Dirksmeier the nature of his experience performing such surgeries. Dr. Dirksmeier indicated that he had performed hundreds of such surgeries. Not only that, Dr. Dirksmeier was referred to my client by VA clinic personnel as an expert in conducting such surgeries.
>
> The real case is that Dr. Dirksmeier was only a resident when he operated on Mr. Wooding. Mr. Wooding did not learn that Dr. Dirksmeier was a resident until, on an outpatient follow-up visit, Dr. Dirksmeier told him that he was leaving Pittsburgh. When Mr. Wooding asked him why, he was told, "My residency is over."
>
> Had my client known that Dr. Dirksmeier was only a resident he would never have allowed him to operate on him. ...

See Docket No. 26-3, p. 2. Certainly this level of detail satisfied the requirement that the VA be put on notice that Wooding claimed that Dirksmeier misrepresented his experience. Further, in compliance with § 14.2(c), Wooding's amendment was filed prior to the final agency action.

The Government has not argued, much less demonstrated, that Wooding is not entitled to seek refuge in § 14.2(c). Consequently, it has not carried its burden of demonstrating that it is entitled to summary judgment on Wooding's claim of misrepresentation. The Motion for Partial Summary Judgment is, therefore, denied.

II. *Count II - Medical Malpractice*[6]

In Count II, Wooding contends that Dr. Dirksmeier negligently punctured his dura which caused an excessive amount of spinal fluid to leak out and breach his abdominal peritoneum.  Wooding contends that, as a consequence, he now suffers from a variety of ailments.  To prevail on this medical malpractice claim, Wooding must establish: (1) a duty owed by the physician; (2) a breach of that duty; (3) that the breach proximately caused the harm; and (4) that the damages directly result from the harm.  Quinby v. Plumstead Family Practice, Inc., 589 Pa. 183, 907 A.2d 1061, 1070 (2006), quoting, Hightower-Warren v. Silk, 548 Pa. 459, 698 A.2d 52, 54 (1997). In addition, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Simpson v. Federal Bureau of Prisons, Civ. No. 2-2313, 2005 WL 2387631 at * 5 (Sept. 28, 2005), citing, Grossman v. Barke, 868 A.2d 561, 566-67 (Pa. Super. 2005).   "Expert testimony, however, is not required when a matter 'is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.'" Simpson, 2005 WL 2387631 at * 5, quoting, Hightower-Warren v. Silk, 548 Pa. 459, 698 A.2d 52, 54 n. 1 (Pa. 1997).

The Pennsylvania Supreme Court's cautionary language in Toogood v. Rogal,

---

[6] Wooding's claim is actually brought under the Federal Tort Claims Act ("FTCA").  The FTCA constitutes a waiver of sovereign immunity in certain situations.  The substantive state law where the tortious conduct occurs governs a FTCA claim. See Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2000). Because the operation occurred in Pennsylvania, Pennsylvania law applies.

573 Pa. 245, 824 A.2 1140, 1149 (2003), confirms the narrowness of the exception to the requirement of expert testimony:

> Courts sitting in medical malpractice cases require detailed expert testimony because a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care. In contrast, plaintiffs in res ipsa loquitur cases rely on the jury to fill in the missing pieces of causation and negligence, inherent in their cases, with the jury's common experience. Determining whether there was a breach of duty, however, involves a two-step process: the court must first determine the standard of care; it then must examine whether the defendant's conduct measured up to that standard. Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also prove that the injury was caused by the failure to employ that requisite skill and knowledge. We have previously concluded that this must be accomplished with expert medical testimony presented at trial by doctors testifying as expert witnesses.
>
> *Res ipsa loquitur* must be carefully limited, for to say whether a particular error on the part of a physician reflects negligence demands a complete understanding of the procedure the doctor is performing and the responsibilities upon him at the moment of injury. Thus, in evaluating a doctor's decision to administer a nerve block injection in a particular location, an intelligent jury analysis requires some understanding of the results of giving the injection in various places; the skill required in pinpointing a specific location; and the likelihood of giving the injection in an unintended site. We affirm our earlier conclusion, set forth in numerous decisions of this Court that, medicine being an applied science, the realm of reasonable choice is best defined by those engaged in the practice, and expert medical testimony on this issue is required. As aptly noted by the Justices of the Supreme Court of New Mexico, "The cause and effect of a physical

> condition lies in a field of knowledge in which only a medical expert can give a competent opinion .... [Without experts] we feel that the jury could have no basis other than conjecture, surmise or speculation upon which to consider causation." Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520, 523 (1962).

(footnotes omitted).

Here, Wooding concedes that he does not have an expert opinion which either states that Dr. Dirksmeier's conduct fell below the appropriate standard of care in the community, or that the negligent conduct caused the injuries for which recovery is sought. The Government contends that this omission is fatal to the claim. Wooding counters that various statements on the Operative Report,[7] coupled with comments Dr. Dirksmeier made following the operation,[8] make expert testimony unnecessary. Essentially, Wooding argues that operative notes which reveal that a complication occurred, coupled with Dr. Dirksmeier's alleged expression of sorrow regarding that complication,[9] is tantamount to an admission

---

[7] In the Operation Report, it is noted that, "[w]hile attempting to remove the posterior annulus with the pituitary, over to the left side of the posterior C5-C6 disk exposure a bite was taken which resulted in a flow of cerebrospinal fluid. The cerebrospinal fluid leak was stopped after approximately 30 seconds of leaking."

[8] Wooding contends that "[o]n numerous occasions after my June 13, 2001 surgery, Dr. Peter J. Dirksmeier told my wife, Phoebe G. Wooding, and me that he was sorry, that he poked a hole in my spine and that he didn't catch the leak in time and that because of that too much spinal fluid leaked." See Docket No. 37-3, Ex. 13, paragraph 3. Wooding insists that "[t]he way Dr. Dirksmeier looked and acted when he told me that he was sorry ...was that he was ashamed about how he performed the operation, that he was negligent in performing my surgery." Id., paragraph 4. I decline to consider Wooding's inference regarding Dirksmeier's alleged "shame" regarding his negligence. Wooding's inference is not evidence in this case.

[9] Dr. Dirksmeier has filed an Sworn Statement in which he denies making any admission of negligence or fault and / or offering an apology to Wooding. See Docket No. 39-2, Ex. A. Dr. Dirksmeier's statement in this regard is irrelevant, however, as I find that even accepting Wooding's recitation of the facts - that Dirksmeier did in fact apologize for the complication - expert

9

that he negligently performed the operation and thus qualifies as an exception to the requirement of expert testimony.

Significantly, Wooding was unable to identify any case law supporting his proposition, nor did independent research reveal any. Furthermore, I disagree with Wooding. First, operative notes cannot obviate the need for expert testimony. The notes confirm only what happened, not that what happened occurred because of a variance from accepted medical practice. Second, an apology is not the equivalent of an admission. Wooding does not charge that Dirksmeier stated "I performed your operation in a negligent manner" or "In performing your operation I departed from generally accepted standards of medical practice" or something equivalent. Surgery is not without risks. The whole point of informed consent is to educate a patient of the potential risks that may arise from surgery. Here, a complication did occur and Dirkmeier, according to Wooding, apologized for its occurrence. Again, his apology is not the equivalent of establishing that a variance in accepted medical practice occurred. Consequently, Wooding's claim fails based upon the lack of expert testimony establishing negligence.

Further, even if one were inclined to view Dirkmeier's alleged apology to be tantamount to an admission that he performed the operation in a negligent manner (again, a conclusion with which I do not agree), Wooding's claim would still fail. Under Pennsylvania law, a plaintiff must have expert testimony in all but the most simple cases on the issue of causation - that the negligence caused the injuries.

---

testimony is required.

See Simpson, Civ. No. 2-2313, 2005 WL 2387631 at * 5 (Sept. 28, 2005), citing, Grossman v. Barke, 868 A.2d 561, 566-67 (Pa. Super. 2005). Dirkmeier's statement does not establish causation. Wooding contends that, as a result of Dirkmeier's alleged negligence, he has: lost feeling from the chest to the feet; lost balance due to the loss of feeling; curled fingers on both hands; pain running across the groin, in the feet and in the fingers; impotence; anxiety, depression and mental anguish; extreme pain in the neck and shoulders; bladder problems, which include frequent infections, and other injuries and disabilities. See Complaint, ¶ 33. Again, Wooding underwent an "anterior C6 cervical corpectomy and instrumented fusion with iliac crest bone graft." It cannot be said that it is a "simple matter" or within a jury's "common experience," to understand that the injuries identified above would flow from the piercing of a dura and the leaking of cerebrospinal fluid in connection with the above-mentioned surgery. It could be that his injuries stem simply from a worsening of his original medical condition, or from something else entirely. Expert medical testimony is required to demonstrate that these injuries were caused by Dirksmeier's alleged failure to employ the requisite skill and knowledge during the operation. Wooding has failed to supply this expert testimony. Consequently, the Government is entitled to summary judgment entered in its favor on this claim.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>ORDER OF COURT</u>

AND NOW, this **27th** day of March, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Government's Partial Motions for Summary Judgment are granted in part and denied in part.  The Motion for Partial Summary Judgment seeking the entry of judgment on the claim for medical malpractice (Docket No. 29) is GRANTED, and judgment is entered in favor of the Government on this claim.  The Motion for Partial Summary Judgment seeking the entry of judgment on the claim for misrepresentation (Docket No. 11) is DENIED.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge